The next case called, agenda number two, is docket number 1-2-3-5-2-5, People v. Eubanks. If you're ready, Ms. Bendick. May it please the Court, Counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people. This Court should reverse all three holdings of the divided appellate opinion below. By number one, reversing its facial invalidation of section 11-501.2c2 of the Vehicle Code. Number two, by holding that the trial court properly rejected the proposed reckless homicide jury instruction. And number three, by affirming defendant's conviction for the class 1 felony of failure to report. I'll take the issues in this order, but I'm happy to answer any questions at any time. So to begin with section 11-501.2c2, I'll refer to this provision going forward as the implied consent provision. There are two independent bases for this Court to reverse its facial invalidation. The first is a well-established avoidance principle. This Court, in cases such as People v. Lee, has reaffirmed that courts should not facially invalidate statutes when there are narrower grounds on which to resolve issues. Here the defendant was challenging the police gathering samples of his blood and urine as a DUI suspect for chemical testing. And here before the Court, as the appellate court held, the parties agreed that the police violated his Fourth Amendment rights in gathering these samples. There was no search warrant. He did not consent. There were no documented case-specific exigent circumstances. And the good faith exception does not apply because the police used physical force to gather those samples, contrary to this Court's case of People v. Jones. Given all of those conclusions, that is the basis on which the testing-related evidence should have been suppressed. That's the basis for reversing his aggravated DUI conviction. And so given all of those conclusions, it was unnecessary for the appellate majority to go on to consider the facial validity of the implied consent provision. But even putting that aside, there's a second basis for reversal, and that is on the merits that this provision is not facially unconstitutional. That is a very high burden for a defendant to establish, and it is only if there is no set of circumstances in which a provision can validly operate that it should be facially invalidated. And yet, as I just alluded to, there are three circumstances in which, under Fourth Amendment precedent, these chemical tests can be gathered from DUI suspects. If police get a search warrant, if they obtain valid consent, or if there are case-specific exigent circumstances. And so for the purposes of facial validity, the only question is whether the provision prevents any of these circumstances from operating. But Ms. Benick, in all those situations, are the police really acting pursuant to the statute? Because under the situations that you give, consent, exigent circumstances, and warrants, even in the absence of the statute, the police can validly search when those things are present, right? That's true, but that's where the example from Lucien v. Briley comes into play. That's in the reply brief. Lucien cited the case of People v. Ford. And so in that situation, after Prendy v. New Jersey, there was a facial challenge to some sentencing provisions. And there, this court held that that provision was not facially invalid because the operation of an entirely separate statute could cause a compliance with the Apprendi standard. So it's not a problem if the provision challenged itself does not require the constitutional compliance. The only question is if it prevents constitutional compliance. So you're right, while this provision is silent on whether the police should get a warrant, it doesn't prevent them from getting a warrant. And that's the only question for facial validity purposes. So the purpose of the statute wasn't the fact that they didn't have to get a warrant or didn't have to have exigent circumstances? Well, the provision was drafted before McNeely, and so it reflects old constitutional principles. But I would also say the statute continues to serve a valid purpose, which is it gives warnings to drivers in Illinois that if you're getting a driver's license, in doing so you're agreeing to submit to such testing in two situations, where the police have probable cause to believe you committed a DUI and where there is injuries or death as a result of your accident. It puts them on notice of this implied consent inherent in getting a license. So that's actually the principal purpose of the statute. And so long as it doesn't prevent the police from also complying with the Fourth Amendment, then the provision can, at least under some circumstances, operate validly. Counsel, doesn't it put the police officer in a very difficult position? If he chooses to not get a warrant, then there's going to be a challenge at all times. Well, not if the person consents or not if they're also consenting. Well, I'm assuming that they're not consenting to it, and then there's going to be a challenge. Well, yes, but there is still the exigent circumstances, case-specific situation. If the police here had documented specific reasons why either the investigation or dealing with the fact that there was a body at the scene, that there were injured persons at the scene, that they tried to get a warrant but a judge was not available, if those had been documented, that would also justify the warrantless non-consensual testing. And so that's the important point here. There's multiple ways in which this can function. And police should know after McNeely that the first instinct should be try to get the search warrant. I mean, that is what the U.S. Supreme Court says. But then you have to look to another statute at all times. We're just looking at this statute, and what does it provide direction to the police officer? It's silent, but again, the only question for facial validity purposes is whether it prevents constitutional compliance in all circumstances. It's such a high standard, and that is why this Court has cautioned that it causes instability to the legal system if statutes are facially invalidated. That is why it is such a high standard. This statute as written causes difficulty, isn't it? No, it's simply silent. And the police should know from McNeely that they should first start by getting a warrant, but it also should know that they need to warrant the motorist. Their duty in getting a license is to submit to these tests under these situations. That is part of the deal in getting a driver's license and driving in Illinois. Even if we agree with your position on this, would you think that this Court should reach out to the legislature to rewrite this statute to clear some of this up? Sure, that's entirely appropriate, and this Court has done that in other situations. But again, this is a very narrow issue of simply the facial validity. But yes, this Court could certainly signal to the legislature to look at McNeely, to look at current situations. Not only could we, do you think it would be the prudent thing to do? Sure, yes, I would agree with that. Thank you, Your Honor. And in fact, my opposing counsel provides some specific suggestions in Rappeley's brief of other states and how they have adjusted their statutes in light of McNeely. But I would like to turn to the second issue. What is the standard of review in this matter? For which issue, I'm sorry? For the first issue? Yes. Well, because it's a question of constitutionality, it's de novo review. But it is still that high standard that defendant has to satisfy. But I would like to move on to the second issue as well, which is the propriety of the trial court's decision to not give the reckless homicide jury instruction. Now, of course, in a recent case from this court, People v. McDonald, this court has explained some relevant principles for this area. That first, a defendant is entitled to a lesser included offense jury instruction if there is some evidence that's believed by the jury would support a conviction for the lesser offense. But that on review, the appellate court or this court reviews the trial court's decision in this area through the deferential abuse of discretion standard. Now, it's important to be entirely clear on the two offenses that we're comparing here. We're looking at first degree knowing murder, and we're looking at reckless homicide. Both of these offenses involve a person who is acting without the objective of killing someone, but is acting with conscious awareness or knowledge that his conduct is creating a risk of harm. And that's where the difference lies. For first degree knowing murder, it's a substantial probability of causing death or great bodily harm. And with respect to reckless homicide, it's a likelihood of death or great bodily harm. Now, in McDonald, the case was looking at involuntary manslaughter instead of reckless homicide. But it's important to note that reckless homicide and involuntary manslaughter are nearly identical offenses that are created in the same subsection. And the only difference between them is that reckless homicide involves the driving of a car in causing the death or great bodily harm. And so the trial court here, in deciding to reject this reckless homicide instruction, cited the sum total of the characteristics of the driving, looked at the setting in which this collision occurred, and looked at the injuries inflicted and concluded that it reflected such a degree of dangerousness, this driving in these conditions, that defendant could not have concluded that his conduct was posing merely this lesser degree of risk of harm that's inherent in reckless homicide. Now, that is a well-established rationale in the involuntary manslaughter context. It's been reaffirmed in several cases from the appellate court and this court, including in McDonald itself. And although there aren't any cases in the reckless homicide context that use that same rationale, this court should apply it. And that is because, as I already mentioned, these two offenses, involuntary manslaughter and reckless homicide, are nearly identical. It is only the fact that a car is involved that is the only difference between them. Isn't there still a question, though, that this defendant was the driver? Isn't that an issue? Maybe he should have been remanded instead of the reduction? Well, I mean, he contested it, but given the fact that he fled police and the police followed him and ultimately saw him exit the car and arrested him on the scene, I would say there's not really a credible dispute about that fact. I mean, he certainly was entitled to testify to that and raise that defense,  because of the way in which he was promptly arrested at the scene and seen leaving the car that caused the accident. So I would point out, though, that a lot of the specific examples that in McDonald and other cases for involuntary manslaughter purposes have flushed out these factors that help determine what is the level of dangerousness of the conduct involved. Because, again, that's the only difference here between first-degree knowing murder and the lesser offense. Help me to understand. We're to apply an abuse of discretion standard. Yes. And we also have said that if there's some evidence, an instruction should be given. Right. Can we look at the case and say there is some evidence while still applying an abuse of discretion standard? My answer to that is no, and I acknowledge that that is the most complicated part of this issue, but I would like to explain why. That is to look at McDonald itself. In McDonald, the defendant pointed to a few facts in the case and said, look at the fact that a few of the stab wounds there were superficial. That sounds like recklessness. Let's look at the fact that the defendant and the victim were of similar size. That sounds like recklessness. But it doesn't make sense to pluck out an isolated piece of evidence and look at it in isolation and say, does that indicate recklessness? And the reason why is because you're trying to quantify what is the dangerousness of the conduct, and it would make no sense to look at only part of it in isolation. So to look at it for this case, it would be like the defendant saying, consider the fact that I ran the stop sign at the intersection of Greenview and Toohey, and running a single stop sign, that sounds like recklessness. But that would make no sense because he ran eight stop signs in a row when going around 70 miles per hour with his headlights off in the dark in a residential urban area. So that is why what the court needs to do is look at the totality of the circumstances and consider what is the dangerousness and sort of picture it almost on a spectrum. So as you're going across the spectrum and the level of dangerousness is increasing, at one point along the spectrum you're right squarely in reckless conduct. But as you go farther and farther increasing the dangerousness, at some point it becomes a jury question. It's a close call whether it's the degree of dangerousness and recklessness or it's the degree of dangerousness in knowing murder. But as you continue further up the spectrum, at some point you cross a threshold where it's no longer tenable to say that the level of dangerousness posed by my behavior is merely reckless. That's essentially what the majority said in McDonald. So it sounds like you're saying that there is some evidence of recklessness but that dissipates as you get further along the spectrum. Well, right, because since, again, I guess that standard that you cite is there some evidence of a lesser offense, that applies to any offenses in the criminal code. But since we're looking at the specific example of knowing murder and a lesser offense of recklessness, because the only difference is what is the level of dangerousness posed, it only makes sense to consider the totality of the dangerousness of the conduct because otherwise if you just pluck out one piece of information, the fact that he ran this one stop sign, that's entirely misleading because, no, he ran eight stop signs in a row and it was dark and he didn't have his headlights on and he was going 70 miles per hour. So it only makes sense to consider the totality of the circumstances of both the driving as well as the conditions in which it occurred. Ms. Penick, I'm interested in the first part of the Chief Justice's question, the standard of review. You would say the appellate court found clear evidence of recklessness, right? Well, I guess so, yes. I guess I would have to agree. Okay, but you see the appellate court as doing de novo review, right? Yes, yes. Isn't that somewhat of a semantical distinction? I mean, isn't the appellate court also saying that the trial court disregarded evidence of recklessness, therefore they abused their discretion in that disregarding of the evidence? I'm trying to figure out how that is a de novo review and if the appellate court has the right to do what they did and said, hey, there was evidence of recklessness the trial court didn't look at, we see it in looking at this record. Is that de novo or is it the trial judge abused his discretion in ignoring the evidence? Well, I guess my response to that is the paragraph in McDonald which flushed out the difference between de novo review and abuse of discretion and said, well, if you're talking about de novo review, that is directly looking at whether there is some evidence in the record, which is sort of what you're describing. It can't be that the reviewing court just looks at the evidence and says, this singular piece, this is some evidence of recklessness and apparently because the trial court ignored it, that was an abuse of discretion. That's collapsing the two into themselves because it's simply the reviewing court itself directly looking for whether there was some evidence. I mean, that's de novo review by definition. So instead, I would say that to correctly apply the abuse of discretion standard of review under McDonald, what this court, the appellate court, needs to do is, again, look at the totality of the circumstances as illustrated in the five factors listed in McDonald that help flush out dangerousness of the behavior and consider whether the decision that it was so dangerous as to preclude that lesser offense, is that unreasonable or arbitrary? That is the decision then that's given the deference. And that's where the trial court is in the better position to judge the evidence for all those reasons that were given. And back to the second part of the Chief Justice's question, if the one piece of evidence is intoxication, for example, wouldn't that potentially affect and underlie other behaviors like running eight stop signs in a row?  I would also, again, though, point to McDonald. McDonald was a case where the defendant said, here's some evidence that I ingested alcohol. I had a few beers with this eyewitness at the trial. I had some wine later. And by the way, the victim was also intoxicated and on drugs at the time. And yet, this court in McDonald and the majority looked at the, again, the totality of the circumstances of the behavior and ultimately found a dearth of recklessness, which only makes sense by noting that even if there's slight evidence that someone ingested an intoxicant, that still is not necessarily evidence of intoxication at the key moment. Just because you drank alcohol hours ago does not mean your faculties were impaired at the time of the crime. It does not mean that it affected your understanding of the riskiness of your behavior. So, again, that's why it's a totality of the circumstances approach. It's the only way the McDonald majority makes sense. Am I understanding you correctly that the totality of the circumstances influences the determination of whether there is some evidence of recklessness? Well, it influences the decision of the quantifying of how dangerous is the behavior. And that there's a certain point on the spectrum that the behavior is so dangerous that it would not be tenable for the defendant to claim that he merely understood his behavior as posing that lesser degree of risk that's inherent in recklessness. So what does some evidence mean? Well, I mean, that would mean that if you consider this totality, that it's on that spectrum close enough to recklessness that it's a jury question, that it needs to be decided by the fact finder about which side of the line is it on. Because otherwise, in McDonald, there were specific pieces of evidence cited by the defendant, and yet, ultimately, the trial court appropriately rejected that lesser-included offense. And so that must mean that when you look... Because, again, that's where the stop sign example comes in. It doesn't make sense to pluck a single piece of information to understand the level of dangerousness in isolation, because running one stop sign is very different than running eight stop signs at 70 miles per hour. Well, why isn't that the prototype of what a jury should decide? In other words, the jury hears this, they hear the testimony, the defendant argues it, and the state makes exactly the argument you're making here today. Right. I mean, I would say that there is a whole range, you know, a subsection of cases that are there on that spectrum where it's a close enough call that, yes, it's a jury question, but that there's some point where the level of dangerousness crosses this threshold where it's no longer tenable for the defendant to claim that he merely had that lesser degree of... or an understanding that his conduct posed that lesser degree of risk. And I know I'm about to run out of time, so just very briefly, to turn to the third issue, I'd like to stress that the defendant affirmed himself in his brief that he's merely raising a sufficiency challenge to the failure to report conviction, and it's only on a single element of the offense whether he reported within 30 minutes. And I would like to stress that the state is relying on the fact that later on he... and if I could just complete my thought, if that's okay? You may. Just very briefly. Thank you. That because he claimed he was not in the car, he was not at the scene, it was a reasonable inference, especially under the deferential Jackson v. Virginia standard, to infer that he never reported. So for all these reasons, we would ask that this court reverse all of the holdings of the appellate majority but affirm the reversal of the aggravated DUI conviction. Thank you. Thank you. May it please the Court. My name is Deepa Punjabi from the Office of the State Appellate Defender. I represent the defendant appellee, Ralph Eubanks. If this court will permit, I wanted to spend a few minutes first talking about the denial of the reckless homicide jury instruction. The state has acknowledged that this court in McDonald clarified that the standard of review for this issue is an abuse of discretion, but McDonald also clarified the scope of discretion that the trial court should exercise in determining whether an instruction on a lesser included offense should be issued. And, of course, this court ruled in McDonald that it was adopting the sum evidence standard. And respectfully, I disagree with Ms. Bendick that that means that the trial court, that the abuse of discretionary standard means that the appellate court cannot look at whether there was some evidence in the record of the lesser offense. In this case, the appellate court looked at the record and they found that there was some evidence of recklessness and that the trial court abused its discretion in arbitrarily and unreasonably ignoring that evidence of recklessness, that that by itself constituted an abuse of discretion. And if I could make a point on the issue of evidence of intoxication versus ingestion, because this was something that the appellate court pointed to as evidence of recklessness, that the state argues that they concede that the results of the chemical testing in this case should be suppressed and that there's no other evidence of intoxication, and that to the extent that there's evidence of ingestion of alcohol, that's just evidence of ingestion and not necessarily intoxication. But this is not so. If you look at the evidentiary record, Mr. Eubanks testified that he drank up to a pint of Hennessy. That's approximately 10 shots of hard liquor. He told Officer Ventrella that he had up to a fifth of Hennessy, which is approximately 15 or 16 shots. This is a large amount of hard liquor. And Officer Ventrella testified that at 10.30 p.m. when he started talking to Mr. Eubanks, he could still smell alcohol on his breath. So this would indicate an ingestion of this very large amount of alcohol that was very recent in time to the collision. So given the large amount of alcohol and the fact that Officer Ventrella could still smell it on Mr. Eubanks' breath at 10.30 p.m., this would indicate some evidence of intoxication and not mere ingestion, as the state has argued. The other factor that the appellate court looked at was that the trial court ignored Ms. Murado's testimony that the collision occurred on a quiet street in a quiet residential neighborhood. Certainly if this was a quiet street rather than a street bustling with activity, that factor could be seen as lowering the riskiness of driving in that matter such that the conduct was merely reckless rather than knowing. And that's what the appellate court found. Now the state had pointed out that some parts of Ms. Murado's testimony seemed to indicate this was not such a quiet street. Some parts of it did. But I think in McDonald, this court had indicated that these are questions for the jury, that as long as there's some evidence, even though there may be some conflicts in the evidence, as long as there's some evidence of recklessness, that the jury should determine those questions. Now the state characterized involuntary manslaughter as practically identical to reckless homicide. And I acknowledge that the case law does treat them as nearly identical for many purposes. One place where that analogy does break down is where the court relied on the severity of impact. I'd argue that the trial court abused its discretion when it relied on the severity of impact or injury in denying the or in finding no evidence of recklessness because that's not really a factor that bears on the level of intent in these circumstances. The driver of a car cannot really control the impact of a car collision in the same way as a person beating or stabbing or shooting someone can control the number or force or location of blows or bullets. So the severity of impact or injury simply does not bear on the level of intent under these circumstances. And so the trial court additionally abused its discretion in relying on that factor to deny the recklessness instruction. Unless this court had any questions on this issue, I wanted to move on to discuss the constitutionality of the blood draw statute. The state raises two questions for this court to resolve, whether the appellate court should have reached the question of facial invalidity at all and whether the statute is in fact facially unconstitutional. Now, the state has argued that the appellate court should not have reached the question of facial invalidity and certainly this court has affirmed a principle of constitutional avoidance and has held that a court should avoid determining the constitutional question if the case can be resolved on other non-constitutional grounds. Here, however, there were no other grounds upon which the challenge to Mr. Eubanks' aggravated DUI conviction could have been resolved. And the question of the constitutionality of the chemical tests was so wholly integrated with the question of the constitutionality of the statute pursuant to which those tests were taken that it doesn't make sense to separate those two out. And there's no question here that the Fourth Amendment violation that occurred was as a result of the statute application. The party stipulated as such in the factual basis in Mr. Eubanks' pretrial motion. By way of contrast, in this court's decision in Lee, which the state is relying on, the question of whether the police had probable cause to arrest for violation of the loitering statute at issue in that case, that was totally separate from the question of the statute's constitutionality. So there, the Fourth Amendment violation that occurred did not occur as a result of the statute's application. Instead, the court found that there was not probable cause to believe the loitering offense had even been committed. So the Fourth Amendment grounds upon which the court ruled was truly separate from the question of the statute's constitutional validity. And that's just simply not the case here. So it wouldn't make sense to find the warrantless chemical tests unconstitutional without also addressing the statute pursuant to which those tests were conducted. With respect to the statute's argument for facial invalidity, the state has argued that the statute is not facially invalid where it can be validly applied in certain circumstances, such as if there are provable exigent circumstances for the police to obtain a warrant. So the state argues the statute here is valid because it does not preclude or prevent the police from obtaining a warrant or documenting the existence of exigent circumstances before compelling testing. In fact, the statute essentially does prevent the police, or at least it actively discourages the police from getting a warrant or documenting case-specific exigent circumstances because it basically instructs them that the officers can rely on this presumed, per se, exigency of a fatality or serious injury in a DUI case instead of determining whether a warrant can be obtained. But we know under McNeely that these types of per se exigent circumstances or defining exigent circumstances in a per se or categorical way runs afoul of the Fourth Amendment. And that is the inherent constitutional defect in the statute, is that it codifies an unconstitutional practice. It codifies a per se exigency. If I could address the failure to report conviction, if this Court didn't have any other questions on the other two issues. The appellate court reduced Mr. Eubanks' Class I conviction for failure to report to Class IV, leaving the scene of an accident because it found that the state could not prove the offense without implicating the defendant's right against self-incrimination since he was arrested only a few minutes after the offense occurred, prior to the conclusion of that half-hour reporting period. And Appellee maintains this was the correct result both because the evidence was insufficient and because the self-incrimination grounds upon which the appellate court ruled were proper and correct. Now, the state urges that this Court follow the Second District Appellate Court's approach, whereby the Court infer from the defendant's subsequent denials of involvement that he had not made the required report within the first half-hour. And first and foremost, Appellee maintains this is an inherently speculative inference to make. We really don't know what was said during those first 30 minutes. And we have to remember, Mr. Eubanks had just been in a car crash himself when his car finally stopped. He was intoxicated at the time. He may have been confused. It's entirely plausible that he may have disclosed his involvement and then recanted, as suspects and witnesses sometimes do. There's just no way to know what was said in that first half-hour. And for that reason, a lonely appellate court's holding should be affirmed. Now, the appellate court found it would not consider any evidence that impinged on Mr. Eubanks' right not to incriminate himself. And the state argues that constitutional self-incrimination concerns are not implicated by hit-and-run statutes, where this information that is requested from the statute is primarily to affect a non-criminal and regulatory purpose. Was the self-incrimination challenge first brought to the attention of the court in the reply brief? It was. It was in response to the state's request or argument that the appellate court follow people v. Moreno and argued that the court make this inference from the evidence on reply. And then argued, well, that in addition to not being sufficient to sustain the state's burden would also create the self-incrimination problem. So it was first. That's your argument as to why it's not forfeited, that it's in response? That it's in response, but I would also add that even if this court finds that it was a wholly separate argument first raised on reply, the appellate court was entitled to address it. I mean, forfeiture bars the parties, but it does not bar the court. The appellate court was entitled to reach it, and the appellate court did get the benefit of briefing on the issue from both parties. The state briefed the issue in its petition for rehearing, which the court ordered the defendant to respond to. So the appellate court got the benefit of briefing on the issue from both parties and was authorized to reach the issue and decided to reach the issue on those grounds. So if I could just make a point that the regulatory purpose that the statute is intended to serve, these types of statutes are intended to serve, are not really served under these circumstances where the police already know that there's been an accident, where and when this accident has taken place, who was involved, that Mr. Eubanks is likely the driver. So the regulatory purpose for the regulatory justifications here are not quite so compelling, and on the other side, the risk of self-incrimination is extremely high. The threat of incrimination is, you know, Mr. Eubanks is being asked to report that he's the driver to the very same police officers who are in the midst of conducting an active homicide investigation while holding him in custody as the primary suspect of this investigation, and he is required to report on the very same vehicular incident out of which these potential homicide charges are going to arise. This is not a situation where the threat of incrimination is just incidental or just a possibility. It's the practical certainty under these circumstances. So the appellate court correctly decided that because defendant FLE was in custody on homicide charges minutes after the offense, the court would not consider evidence or draw inferences on the failure to report charge that burdened the defendant's right against self-incrimination. I acknowledge that under the appellate court's reasoning, it may be that the state is always going to have a difficult time proving this offense under these circumstances, but if you look at the language of the statute, I think you can infer that the legislature did not intend or envision that these charges be brought under such circumstances. The statute contains a prosecution immunization clause, but the immunization only extends to the offense being seen. So if you report within the half hour, you're then immunized from being prosecuted for leaving the scene of an accident. I don't think the legislature envisioned that the charges would be brought when someone is already in custody, potentially facing much greater charge prior to the conclusion of this half hour period, because otherwise you can assume that immunization clause would extend beyond just the offense of leaving the scene. So it may be that under this appellate court's reasoning, the state will always have a hard time proving this offense under these circumstances. But I don't think the legislature intended that this statute or these charges be brought when a defendant is in custody prior to the conclusion of that half hour reporting period. One quick question back to the constitutionality. You used the words that the police were actively discouraged or are actively discouraged under the statute with complying with the constitutional requirements. Does our case law require that, or is it more that the statute has to prevent the police from complying with the constitution rather than actively discourage them from? Well, I'd argue that it's so actively discouraged. The case law talks about whether it prevents. To be clear, the case law talks about whether. Let me rephrase my question then. Does it require that the statute so actively discourage the police, or is the requirement under our case law that the statute prevents? Well, the point I was going to make is that it so actively discourages the police as to basically prevent this from happening. So your argument is that it's tantamount to. It's tantamount to prevent this. Why would the police, if they're being told they can, the statute instructs that they're to rely on this presumed, per se, exigency. Why would they then, under the statute, it would be redundant for them to go then get a warrant or start documenting case-specific exigent circumstances? And that's an inherent constitutional defect in the statute. So for the reasons argued here and in appellee's briefs, I'd ask that you affirm the appellate court's holding on all issues. Thank you. Great. I? I think I'll refer to the issues in the order that my opponent just did, just for clarity. So to begin with the reckless homicide instruction. So if we're applying this sort of multi-factor test from McDonald to try to quantify the dangerousness of the driving, there obviously are going to need to be a few tweaks. I'll acknowledge that when there's a vehicle collision, that's a single event. One of the factors under McDonald is whether several, multiple wounds were inflicted. That is perhaps something that weighs against precluding the lesser offense. But there are two factors from the McDonald list that weigh even more heavily in favor of precluding the instruction in the context of a vehicle collision. And one of them is disparity in size and strength. I mean, obviously in the involuntary manslaughter context, that's comparing an altercation between two adults versus an altercation between an adult and a child, for example. But when you're talking about a car versus a pedestrian, of course, that is an even greater disparity in size and strength. And the pedestrian, as the two pedestrians here are defenseless, which is a separate factor under McDonald, to try to ward off the harm that is coming their way when they're going to be hit by a vehicle. Now, my opponent is trying to say that, oh, when you're driving a car, you can't control the injuries that you inflict. I strongly disagree. People should know when they're driving a car that they have this enormous machine that they are directing that can inflict great harm, whether they get into a collision with another vehicle or a pedestrian. And we see that in the catastrophic injuries suffered by the two pedestrians in this case. Now, my opponent actually expressly tried to encourage this court to not consider the injuries at all. But again, that is an explicit factor from McDonald. What is the severity of the injuries inflicted? And there was a case called People versus Ward in which it was an altercation between an adult and a child,  look at how severely this child was injured. There is no basis for that person to have believed that that conduct posed only a lesser degree of risk. And I would say that is the same analysis that applies when you're talking about a vehicle colliding with a pedestrian. It is not surprising, unfortunately, that Maria here had her body propelled up into the tree branches, across the street, and she suffered multiple fractures to many of her bones. She also suffered numerous lacerations, abrasions. And here, her six-year-old son, Jeremiah, was also severely injured. That is the nature of a car colliding with a pedestrian. And when we're talking about a car going through an urban area, a residential area, at a time of day when people are expected to potentially be on the scene, the defendant had good reason to know that his conduct was very dangerous. And in fact, the way the trial court described it, it actually is surprising that more people were not harmed, more people were not severely injured, given the extreme dangerousness of the driving here. Now, the defendant brings up the intoxication. Again, I'd point to McDonald. McDonald involved a defendant who had ingested alcohol. And I believe, Justice Thomas, you raised the point that perhaps intoxication in some cases might go towards or be relevant towards whether a defendant has some sort of diminished understanding of how dangerous their behavior is. But it also, I would say, weighs towards the dangerousness of the driving itself. Because a person who's intoxicated is less able to control or avert a collision when it's about to occur. So on one hand, we have here what is very negligible evidence of ingestion of alcohol. We have no corroborating evidence that it impaired his faculties in any way. So much like McDonald, it was at least not an abuse of discretion for the trial court to have looked at the sum total of the dangerousness of the driving here under the circumstances, and in light of the serious injuries inflicted, to have found that it crossed that threshold into a place where it's not an abuse of discretion to preclude that lesser offense instruction. And that is not ignoring evidence. So as we're talking about how do we... Chief Justice, you asked the question that raised this point about how do you reconcile some evidence versus this notion of the totality of the circumstances test. It is not that the trial court ignored single pieces of evidence. It's that they weighed them as a whole in order to quantify how dangerous was this. And so yes, maybe a single collision is a single event and that weighs slightly towards recklessness, as opposed to a case like McDonald where multiple blows were inflicted by a weapon. But on the other hand, given the other several strong factors that increased how dangerous this was, the speeding, the conditions, the severity of the injuries inflicted, that's considering all of the evidence, but considering it together and noting that it's far enough up on the spectrum of dangerousness as to at least not abuse discretion in not giving that lesser offense instruction. As Justice Garmon inquired earlier, that sounds like an essential jury question to me. Doesn't it? Where does it change from recklessness to something else? Well, again, it's a jury question in that range where it is a close call. I mean, to look at McDonald, the only way the majority in McDonald makes sense, because remember, ultimately, this court affirmed the refusal to give that lesser offense instruction. And there were a few things that the defendant cited as weighing in favor of recklessness. But still, in McDonald, just two years ago, this court held that there can be cases where there's such dangerousness that it's not a close call. It's not a close enough call that it needs to be a jury instruction, that it's so dangerous, it's moved far enough up the spectrum that there no longer needs to be that jury determination. And so I'd like to turn to the constitutionality of the statute. I would stress the point that came up towards the end of my opponent's remarks. It's not an actively discouraged standard. In fact, I'm actually not sure where my opponent gets that from the language of the statute. Because, again, the statute is actually not solely speaking to police about gathering the samples. It's actually speaking to drivers and giving them notice that because you have a license, you're expected to submit under these conditions. It doesn't purport to give the police, step by step, what steps they should take to get the testing. So I wouldn't say it discourages it. It's silent. But the bottom line is, as Justice Thomas alluded to, the key fact only is whether it prevents constitutional compliance in every case, which my opponent hesitated herself to say. And finally, to turn to the failure to report, I wanted to stress that there's actually an important distinction here between what the appellate court majority here talked about in terms of self-incrimination and what defendant raised even just for the first time in her reply brief in the appellate court. Defendant is only contesting the state encouraging this court to draw the inference from defendant's denials that he was at the scene that he never reported earlier in the night. That's the piece of evidence where she says, oh, well, does that raise self-incrimination concerns? Well, number one, it doesn't, because defendant chose to speak to the police. That's not any use of his silence. But in any case, that's a different self-incrimination objection than the one the appellate court majority relied upon. Instead, the appellate court said, any case in which a defendant is arrested within the reporting period, that would involve use of post-arrest silence, and that's a self-incrimination concern. Now, number one, that's an argument that defendant still to this day is not making. I mean, I think actually maybe she sort of adopted it a little bit in her remarks here today, but that was never briefed in the appellate court, even in the reply brief. And for the reasons in the opening brief before this court, it is meritless in any case because of the nationwide consensus that these failure-to-report accident reporting statutes withstand Fifth Amendment challenges. The U.S. Supreme Court has made that clear, not only in the Byers case, but in the Hubbell case. The court has acknowledged that even if you're compelling certain speech, if it's just sort of factual background information for purposes unrelated to criminal prosecution, instead for regulatory purposes, the fact that later on it becomes a byproduct of something that might incriminate you down the road does not raise a Fifth Amendment problem. Ms. Bendick, how do you respond to opposing counsel indicating that in a case such as this where defendant's arrested 30 days or 30 minutes and is facing much greater charges, that the legislature could have never suspected that this statute would be used for failing to report under those circumstances? Well, I would actually point to the exact thing that she did, that it has an immunization provision in it. But the fact that the legislature only chose to immunize the defendant from prosecutions for leaving the scene of the accident, I would say that's an expression from the legislature that they were not concerned if there are other types of charges involved that might come of it. The fact that they didn't add that to the list shows that they did envision that this would apply. And after all, the only thing that would be encouraged by defendant's rule is would encourage the police to stand there, watch the clock, and wait for the 30 minutes to elapse and then arrest the person. What good does that do? It doesn't make sense. And given that there is no Fifth Amendment concern as discussed, I would say that the appellate court majority's rationale should be rejected. Thank you. Thank you. Case Number 1, 2, 3, 5, 2, 5, People v. Eubanks, will be taken under advisement as Agenda Number 2. Ms. Bendik, Ms. Punjabi, we thank you for your arguments this morning. You are excused.